IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

GREGORY R. GREGORY                                                                               PLAINTIFF

      v.                                       Civil No. 08-6085

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      Plaintiff, Gregory Gregory, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

      The plaintiff filed his application for SSI on October 29, 2005, due to a back injury, nerve damage, emphysema, heart problems, vision problems, and memory loss. (Tr. 52-59, 101). His applications were initially denied and that denial was upheld upon reconsideration. (Tr. 37, 41-42). An administrative hearing was held on November 20, 2007. (Tr. 194-221). Plaintiff was present and represented by counsel.

      At the time of the hearing, plaintiff was 50 years of age and possessed the equivalent of a high school education with some technical/vocational training in mechanics[1]. (Tr. 52, 197).

---

      [1]However, plaintiff testified that he had no proof of this training. (Tr. 197).

**AO72A**
**(Rev. 8/82)**

He had past relevant work ("PRW") experience as an automotive technician/mechanic. (Tr. 15, 88-95).

On April 25, 2008, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's mild COPD and mild degenerative disk disease ("DDD") of the lumbar spine did not meet or equal any Appendix 1 listing. (Tr. 16). He found that plaintiff maintained the residual functional capacity ("RFC") to perform the exertional requirements of a full range of light work.[2] (Tr. 16). Utilizing the Medical-Vocational Guidelines ("Grids'), the ALJ then found that plaintiff could still perform work that existed in significant numbers in the national economy. (Tr. 15, 16).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 8, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 8, 9).

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial

---

[2] Light work requires standing or walking for six hours out of an eight hour workday, lifting no more than twenty pounds at a time, and frequent carrying of objects weighing up to ten pounds at a time. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also* Social Security Ruling (SSR) 83-10.

evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.    **The Evaluation Process**:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

AO72A
(Rev. 8/82)

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §

4

404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The relevant medical evidence is as follows. On July 18, 2005, plaintiff sought treatment for substernal chest pain he had been experiencing for approximately 2-3 months. (Tr. 153-154). He indicated that the pain was getting worse. Plaintiff was working in the tire shop at Wal-Mart and reported experiencing chest discomfort with heavy lifting. Nuclear testing was scheduled for July 19, 2005. (Tr. 153-154).

On July 19, 2005, plaintiff saw Dr. Allen Lee with complaints of angina. (Tr. 137). A resting EKG showed generalized J point elevation. Therefore, a stress test was ordered. He did experience chest tightness during peak exercise, but no diagnostic ST segment changes were noted. The stress test revealed decreased ventricular function with a post stress ejection fraction of 42%, global hypokinesis throughout all the segments, and mildly abnormal SPECT imaging showing a perfusion defect of the inferior segments. (Tr. 136). Dr. Jeffrey Tauth indicated that the scan could not exclude the presence of hemodynamically significant coronary artery disease. As such, he recommended proceeding with coronary angiography. (Tr. 136).

On July 21, 2005, cardiac catheterization revealed no angiographic evidence of coronary artery disease, normal left ventricular systolic function, and normal left heart pressures. (Tr. 155-156). It was determined that his chest pain was non-cardiac in nature. (Tr. 155-156).

On July 22, 2009, plaintiff reported that he had been to the cardiologist for a work-up, which revealed that his heart was not responsible for his symptoms. He reported tightening in his chest, excessive heart rate, burning in his arms and legs, shortness of breath, and dizziness. Plaintiff stated that he felt as if he would faint. The doctor diagnosed him with chest pain, anxiety disorder, panic attacks, and tinnitis. He prescribed Lexapro and Ativan. (Tr. 148).

On August 2, 2005, plaintiff reported dizziness. (Tr. 146). The doctor diagnosed plaintiff with obstructive lung disease, dyspnea, anxiety and questionable panic disorder, and chest pain under evaluation. (Tr. 146).

On August 10, 2005, Dr. Lee noted that plaintiff had been hospitalized for cardiovascular catheterization which revealed normal coronary arteries and relatively well preserved left ventricular function. (Tr. 140). He was of the opinion that plaintiff's symptoms were secondary to chronic obstructive pulmonary disease ("COPD"). He advised plaintiff to quit smoking and return in 6 months. (Tr. 140).

On October 4, 2005, plaintiff requested home oxygen. (Tr. 145). The doctor ordered home oxygen, prescribed Advair, and advised plaintiff to stop smoking. (Tr. 145).

On October 27, 2005, plaintiff had become less active and had gotten to where he could not do his work as a mechanic. (Tr. 177-179). Plaintiff stated that he had recently gone to the emergency room gasping for air and almost passed out. Dr. Robert Johnson noted that he had been placed on oxygen. In spite of this, plaintiff stated that the air did not seem to be helping him. Plaintiff complained of weight loss, itching areas, hearing loss and ringing, blurred vision with glasses, heart palpitation and sharp pains, dizziness, tingling sensations, memory loss, personality changes, and joint and muscle pain. An examination revealed decreased breath

sounds and a somewhat distant but regular heart rate and rhythm. Dr. Johnson noted that pulmonary function studies had revealed a mild obstruction. A chest x-ray was also reviewed, which did not reveal any hyperextension and was consistent with emphysema. Blood tests and a urinalysis were unremarkable. Dr. Johnson felt plaintiff did have some emphysema based on his history of smoking. However, he felt his emphysema was mild and should not be as incapacitating as it was. Because plaintiff had only undergone catheterization of the left side of his heart, Dr. Johnson ordered a work-up for problems on the right side. He also advised plaintiff to stop smoking. (Tr. 177-178).

On November 2, 2005, plaintiff underwent pulmonary function tests. (Tr. 150-152). The tests revealed mild obstructive lung disease. (Tr. 151).

On December 8, 2005, plaintiff was having a lot of difficulty breathing and was not able to function at his job. (Tr. 175). Dr. Johnson stated that he felt plaintiff had a significant amount of emphysema because his oxygen saturation rate upon presentation was 83%. That rate went up to 97% when resting. An examination revealed fairly clear breath sounds with a little wheeze, especially on forced exhalation, and prolonged expiratory effort. Dr. Johnson indicated that this was consistent with severe obstructive lung disease. He noted that plaintiff's most recent pulmonary function studies showed a decrease in function from the previous study. Dr. Johnson also stated that plaintiff would not qualify for disability based on these values and should stop smoking. He also indicated that plaintiff could not afford an Advair inhaler because he did not have insurance. Therefore, he was given an Advair inhaler. (Tr. 175).

On December 13, 2005, plaintiff underwent a general physical exam. (Tr. 159-165). He complained of chronic lower back pain since the age of 18 that occurred with exertion and was

relieved by sitting still and taking Advil, short-term memory loss requiring him to keep reminder lists, shortness of breath on minimal exertion, frequent generalized headaches, and left ventricular dysfunction. A normal range of motion was noted in all areas. No muscle spasm, muscle weakness, muscle atrophy, or sensory abnormalities were noted. Further, plaintiff's gait and coordination were normal. The doctor also found plaintiff to have good grip strength and the ability to walk on his heel and toes and squat and arise from a squatting position. He diagnosed plaintiff with probable COPD, but noted no limitations.(Tr. 159-165).

On December 29, 2005, x-rays of plaintiff's lumbar spine revealed possible degenerative disk disease at the L5-S1 space. (Tr. 166). This same date, plaintiff also underwent pulmonary function tests, which revealed moderate premedication obstruction and mild post-medication obstruction. (Tr. 167-172).

On April 4, 2006, plaintiff had a follow-up appointment concerning his COPD. (Tr. 173). Dr. Johnson noted that his lung function was only mildly obstructive, but plaintiff did seem to be more limited. He stated that plaintiff's resting oxygen saturation was good at 96%, but that he was limited due to his saturation rate going down with exertion. Dr. Johnson believed plaintiff was also likely suffering from pulmonary hypertension related to his COPD. An examination did reveal decreased breath sounds and prolonged expiration. Dr. Johnson diagnosed plaintiff with significant COPD in the mild to moderate range with a history of desaturation. He gave him an Albuterol inhaler and recommended that he continue trying to quit smoking. (Tr. 173).

As the records make clear, plaintiff was diagnosed with a severe obstructive lung disease, although his pulmonary function studies revealed only a mild to moderate obstruction. Medical

records indicate that plaintiff exhibited a significant decrease in oxygen saturation and an increase in shortness of breath with exertional activity. He was also oxygen dependent and reported feeling dizzy and faint. Clearly, this could impact plaintiff's ability to stand and walk for 6 hours during an 8-hour workday and push and pull. It could also affect his ability to crouch, kneel, climb, and crawl. Plaintiff could also have environmental restrictions due to his lung impairment, none of which were considered by the ALJ. Therefore, we believe remand is necessary to allow the ALJ to reconsider plaintiff's limitations.

We also note that the record does not contain an RFC assessment from any of plaintiff's treating doctors. The only assessment in the file was prepared by a non-examining, consultative doctor who concluded that plaintiff could perform medium level work with no limitations. Clearly, this does not constitute substantial evidence that plaintiff can perform this level of work. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Therefore, on remand, the ALJ is directed to contact plaintiff's treating doctor, and address interrogatories to that physician, asking him/her to review plaintiff's medical records during the relevant time period; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his/her opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). In so doing, the ALJ should also ask the doctor what affect plaintiff's smoking has on his level of impairment.

9

**IV.    Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of October 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE